Donald R. Avery, Plaintiff-Appellee, v. Moews Seed Corn Co.,
Defendant-Appellant.

(No. 70-69;

Third District—March 30, 1971.

Pool & Langer, of Ottawa, for appellant.

Peter F. Ferracuti and James L. Waring, both of Ottawa, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of LaSalle County in favor of plaintiff, Donald R. Avery, and as against Moews Seed Corn Company, as a result of injuries sustained by plaintiff at defendant's plant at Granville, Illinois, on September 30, 1965.

The record indicates that Plaintiff Donald R. Avery was an independent truck driver who delivered corn to defendant's plant. Drivers who delivered corn would customarily back their trucks up to the west side of the two-story building of defendant, and, as the corn would come out of the truck, it would go into a shaker which carried the corn over to a black rubber conveyor belt, which was about 14 inches wide. The belt was below the floor level and it was covered by steel plates. The belt was 50 to 60 feet long. This conveyor belt carried the corn into the building to an area known as the "boot" area. In this boot area there was a cup elevator with cups about 16 inches wide attached to chains and spaced about one and a half to two feet feet apart on the chains. The cups came down on the south side of the boot area empty, and went across the boot area and picked up corn and the cups then carried the corn up to the second floor. The cup elevator and the conveyor belt were on separate electrical systems and one could be shut off while the other was still in operation. The switches for both the conveyor and the elevator were on the second floor. A man was stationed on the second floor where he could look out a window to the outside to watch for a signal to shut off either or both of the systems. A person on the first floor would be required to go out about 15 feet from the building to see the man in the window and signal to him to throw the switch. The noise level on the first floor was high and a voice call to throw a switch could not be heard.

At various times, when the wet corn was delivered, the conveyor belt would stick and not move, and there was testimony that truck drivers would often assist the defendant's maintenance foreman, a Mr. Yerley, in starting the conveyor system. The drivers would frequently push on the conveyor belt with pitchforks to get the conveyor belt moving. Such stoppage of the conveyor belt occurred on the morning of September 30, 1965, when a Mr. Mende delivered corn at 7:00 A.M. Mr. Mende used

a pitchfork to help start the conveyor going again. Mr. Mende testified that Yerley, the foreman, was present but did not actually direct what he was to do, as all the drivers automatically helped when the belt stuck and they knew what to do. Foreman Yerley admitted that drivers helped with the conveyor belt when it stuck, but asserted that he was still in charge of the operation, and that none of the drivers had ever gotten into the boot area prior to September 30, 1965.

When plaintiff Avery arrived with a load of corn at about 9:00 A.M. the conveyor belt stalled about 15 minutes after plaintiff began dumping corn. At 11:00 A.M. the belt was still stalled and Mr. Mende had returned with another load at such time. Mende testified that when he went inside the building he found Foreman Yerley, another Moews maintenance man, the plaintiff, and another driver, all trying to move the belt and pushing at it with pitchforks. Mende joined the others and they all worked on the belt for about 45 minutes with no success. Finally, according to testimony on behalf of plaintiff, Foreman Yerley said, "Let's move to the boot area where we can put pressure on the drive pulley so we can get this belt moving up there." Plaintiff stated he was standing beside Foreman Yerley when that statement was made. There was a single 2 x 4 board around the boot area about 4 feet up from the floor. There were no warning signs around the boot area telling people to keep out. Yerley then got into the boot area first and plaintiff got in right behind him. Yerley admitted that he moved aside, as he stood in the boot area, to allow plaintiff to get positioned inside the boot area. Yerley was on the south end of the boot and on the west side of the conveyor, and plaintiff was on the north end of the boot.

After plaintiff and Yerley got positioned in the boot area their hands were both on the 2 x 4 almost together and Yerley had his right foot on the belt and plaintiff had his left foot on the belt, with plaintiff's left foot and Yerley's right foot side by side on the belt. The men were in the boot area for a few minutes. While they were in the boot area, the two men applied pressure on the belt with their feet. During the time plaintiff and Yerley were in the boot area, the cup dump was still running, although Foreman Yerley testified that there was no need for it to be turned on as it did not aid in moving the conveyor. While Yerley stated that he did not ask plaintiff to come into the boot area with him, it was clear that he did not tell him to leave. Yerley testified that as soon as he began pushing with his foot he heard plaintiff groan and knew the plaintiff was caught. Apparently, the belt hit a dry spot and spun plaintiff and threw his left leg into the bucket area. Plaintiff was pulled into where his left foot was caught between the bucket and the carrier sprocket. Both Mende and Yerley held on to plaintiff so that he could go no further into the elevator

system and both of plaintiff's boots were carried up on the second floor by the cup elevator. Yerley called and signaled to have the machinery stopped. There is a conflict in the testimony as to how long it was before the machinery was shut off. Yerley called to one employee who signaled to the other on the second floor to shut off the elevator which had caught plaintiff's foot. There was evidence that it was half a minute to 45 seconds before the machinery was shut off. There was also some testimony that the man who should have been on the second floor to throw the switches was actually on the first floor when the incident happened. Mr. Mende stated that he heard Foreman Yerley say that this would teach that man to stay by the windows on the second floor. The foreman also testified that he could have installed switches on the first floor with about half a day's work and at a cost of $25.

Plaintiff's complaint was predicated on negligence of defendant. Plaintiff was permitted to introduce in evidence certain safety rules of the Illinois Industrial Commission applicable to employees, as tending to establish a standard of care or conduct for defendant. The jury returned a verdict in favor of plaintiff and fixed damages at $39,500 upon which judgment was entered. Defendant's post-trial motion was denied.

The first issue for consideration was whether plaintiff was a mere licensee or a trespasser as a matter of law when he entered the boot area of defendant's seed house. It is contended by defendant that plaintiff became a mere licensee or trespasser when he went into the boot area on the first floor of the seed house, and that, as such, the only duty owed to him was not to wilfully or wantonly injure him. In the case of *Briney v. Illinois Central R. R. Co.*, 401 Ill. 181, it was pointed out that a business invitee can lose such status by going to a portion of the premises to which the invitation does not extend.

This question was clearly and properly presented to the jury by defendant's Instruction No. 1 which pointed out that the defendant owed the plaintiff a duty to use ordinary care to see that the premises were in a reasonably safe condition. The Instruction also pointed out that the duty is limited in two respects, first, that it extends only to that portion of the premises which the person has either expressly or impliedly been invited to use or that portion the owner might reasonably expect him to use in connection with the invitation, and, secondly, within that area it extends only to that manner of use which the owner might reasonably expect in connection with the express or implied invitation. The Instruction also pointed out that if plaintiff Avery was on a portion of the premises to which he was not invited, or was using the premises for a purpose other than that for which he was invited, then defendant did not owe him the duty of ordinary care but owed him the duty not to wilfully or wantonly injure him. The question, therefore, of plaintiff's status while he was in the

boot area became a jury question. (*Jones v. Granite City Steel Co.*, 104 Ill.App.2d 379.) In the cause before us, there was clear evidence presented from which the jury could have concluded that plaintiff was an invitee while in the boot area. It was shown that drivers who delivered corn to defendant's seed house helped with the conveyor belt when it stuck on several occasions including the morning of the incident involved in this case. Foreman Yerley admitted that drivers helped with the belt when it stuck and he worked along with them. There was also evidence that Foreman Yerley had said, "Let's move to the boot area where we can put pressure on the drive pulley". The evidence disclosed also that when Yerley went into the boot area and he saw the plaintiff following him into this area, he made room for the plaintiff to stand in the boot area with him. He did not request that plaintiff get out of the boot area.

██ On the basis of such evidence, the jury could reasonably conclude that plaintiff was requested to go into the boot area by the foreman in charge of the seed house. There was evidence that Foreman Yerley made room for the plaintiff and participated with him in pushing on the belt so that plaintiff certainly retained his status as a business invitee under the circumstances. While defendant argues that no driver had ever been in the boot area prior to this incident, it was reasonable to assume from the record that the drivers would do whatever they could or whatever they were requested to do to help get the belt moving. It is, therefore, clear that plaintiff, on the basis of the record, did not lose his status as a business invitee.

██ Defendant also contends that plaintiff was guilty of contributory negligence as a matter of law. Defendant cites *Munden v. East St. Louis Light & Power Co.*, 247 Ill.App. 270, where the court emphasized that every defendant is held liable for all those consequences which might have been foreseen or expected as a result of his conduct, but not for those which he could not have foreseen, and is, therefore, under no moral obligation to take into consideration. In the *Munden* case, the plaintiff, after watching a washing machine demonstration by a salesman, put her finger in the wringer. In the cause before us, however, this principle would not be applicable and plaintiff was certainly not guilty of contributory negligence as a matter of law on the basis of the record in this case. There was evidence that he was invited by the foreman to help in the boot area. It was clear that the foreman permitted him to stand in the boot area to help him and did not order him to get out of the boot area. The foreman had a safety procedure set up when he went into the boot area where employees were stationed to relay a signal to the second floor to shut off the equipment if a problem developed. The foreman and the plaintiff were doing identical work in attempting to free the belt at the time of the incident.

There was also evidence that plaintiff had seen Foreman Yerley stand in this boot area on other occasions and apply pressure to the belt with his foot with no apparent risk of injury. On the basis of the record, therefore, it is clear that the question of contributory negligence became a jury question and the finding of the jury that plaintiff was free from contributory negligence should not be disturbed since there was no basis for a finding that plaintiff was guilty of contributory negligence as a matter of law. *Pedrick v. Peoria & Eastern Railroad Company*, 37 Ill.2d 494; *Neurohr v. Richmond*, 78 Ill.App.2d 467.

One issue upon which there seems to be no exact precedent, involved the circumstance that plaintiff was permitted by the trial court to introduce into evidence and read to the jury, two rules of the Illinois Industrial Commission under the provisions of the Illinois Health and Safety Act. The plaintiff's attorney had requested permission to read these rules to the jury. The rules were as follows:

"EMERGENCY STOPS:

(a) Effective power controlling devices, emergency stops or switches shall be provided in each room, section or department so that any particular unit or group of machines or power-transmission equipment therein can be promptly and effectively shut down.

(b) Emergency stopping devices shall be properly marked and shall be easily accessible to the employees affected, and so located that it is not necessary to travel more than 100 feet to reach them, provided this shall not apply to rolling processes where operator is in constant attendance at the controls."

Plaintiff's attorney, recognizing that plaintiff was not an employee of defendant at the time of the incident, so that the Health and Safety Act was not applicable to plaintiff as an employee, requested that the rules be permitted to be shown in evidence for the purpose of establishing a standard of conduct applicable to defendant's plant.

Defendant contends, on the authority of *Jones v. Tonietto and S.S. & E. Corp.*, 112 Ill.App.2d 79, 250 N.E.2d 829, that it was not proper to admit such evidence. In the *Jones* case, plaintiff was allowed to introduce into evidence various portions of the "Structural Work Act". In that particular case there was no employer-employee relationship. In the Appellate Court, plaintiff argued that such rules were offered to show a standard of care. An instruction was given based upon a violation of the Structural Work Act. The court stated that the form of instruction as given was not consistent with a theory of showing standards of care, but rather was predicated directly on a violation of the statute as a basis of liability. The court in that case also stated that since there was no direct violation of the Health and Safety Act, the instruction was prejudicial to defendant

and a new trial was required to be granted. In the *Jones* case, the court expressly stated that it would not rule on the question of whether the provisions of the "Structural Work Act" could have been admitted as evidence of a standard of care.

■■ In analysis of this issue, we feel it was appropriate to allow the Health and Safety Rules to be read into evidence in the instant case as a basis for establishing a standard of care. In *Darling v. Charleston C. M. Hospital*, 33 Ill.2d 316, 211 N.E.2d 253, plaintiff introduced evidence of hospital regulations adopted by the State Department of Public Health under the Hospital Licensing Act and standards of hospital accreditation of the American Hospital Association and even by-laws of the defendant hospital. The court found that it was proper to permit this to show a proper standard of conduct, and the court stated (at page 332):

> "In the present case the regulations, standards, and by-laws which the plaintiff introduced into evidence, performed much the same function as did evidence of custom. This evidence aided the jury in deciding what was feasible and what the defendant knew or should have known. It did not conclusively determine the standard of care and the jury was not instructed that it did."

This was similar to the situation in the instant case. As stated in American Law Institute Restatement of Torts 2d § 286 Comment (g) and § 288B Comment (d):

> "The fact that a legislative enactment requires a particular act to be done for the protection of the interests of a particular class of individuals does not preclude the possibility that the failure to do such an act may be negligence at common law toward other classes of persons. It also does not preclude the possibility that, in proper case, the requirements of the statute may be considered as evidence bearing on the reasonableness of the actor's conduct."

Defendant argues that the evidence would have a prejudicial effect on the jury, as the rules are surrounded by an "official aura". While there may be some such effect, in the instant case the attorney for defendant had the opportunity and did argue that the rules which were read did not create a duty and that the Health and Safety Act had reference to only employer-employee relationships and did not expressly govern the relationship between plaintiff and defendant in the instant case. In the cause before us, the regulations were read to the jury to show a standard of care and there was no suggestion that such rules created a duty expressly owed by defendant to plaintiff. There was no instruction similar to that which caused the court to reverse in the *Jones v. Tonietto* case *(supra)*. In the case before us, both parties argued the effect and application of the rules before the

jury, and it appears from instructions given the jury that the jury was properly informed of the purpose for which the Health and Safety Rules were admitted into evidence.

■■ Similar objection was made to plaintiff's Instruction No. 18 which referred to plaintiff's allegations of negligence. The Health and Safety Act was not referred to in the instruction, which simply asserted that plaintiff claims that he was injured and sustained damage while exercising ordinary care and that defendant was negligent in one or more respects, specifying therein factual references in the language of the rules and to other specific acts of negligence. The Health and Safety Act was not referred to in the instruction. As a matter of fact, the trial court refused to give plaintiff's tendered Instruction No. 17 which did contain a recital that there was a rule in force at the time of the occurrence in question of the Industrial Commission, which rule was specifically set forth in the tendered instruction. Such instruction was refused. As we have indicated, we believe it was proper for the jury to have the rules read for the purpose of establishing a standard of care and conduct, so long as there was no instruction or direction by the court of the character shown in the *Jones v. Tonietto* case *(supra)*. In the cause before us, it was clear that the rules were simply referred to as a standard of conduct or care to be exercised by defendant. We, therefore, conclude that there was no reversible error in the giving of such instruction complained of.

■■ In another of plaintiff's instructions, Illinois Pattern Instruction 10.05, the jury was advised that a minor was not held to the same standard of conduct as an adult. Objection was made to such instruction for the reason that plaintiff was less than six months away from being 21 years of age. Defendant argues that the trial judge should have exercised his discretion not to give such an instruction, particularly in view of the fact that plaintiff was raised around farm machinery. While plaintiff was just six months under 21, the jury knew his age, and could have considered all of this when following the court's instruction. We believe that the giving of such instruction was at least within the discretion of the trial judge and there was no reversible error in giving such instruction on the basis of the record in this case.

■■ Finally, it is contended that the trial court should not have given an instruction which was specifically Illinois Pattern Instruction 34.04 Revised as to future damages. Defendant contends that such instruction is confusing and unintelligible. Our only observation, as to this objection, is that since this instruction has had the basic approval of the Illinois Supreme Court and there is no specific reason why it would be misleading in the cause before us, any change in the wording of such instruction

should come from the Illinois Supreme Court which has the rule making power with respect to Pattern Instructions. On the record, we do not believe it was reversible error to give such instruction in this cause.

Since we find no reversible error in this cause the judgment of the Circuit Court of La Salle County will be affirmed.

Judgment affirmed.

STOUDER and SCOTT, JJ., concur.