FIRSTMARK STANDARD LIFE INSURANCE COMPANY, Plaintiff-Appellee, v. SUPERIOR BANK FSB, Defendant-Appellant (Harris Trust and Savings Bank, as Trustee, *et al.*, Defendants).

First District (4th Division)  No. 1—93—1909

Opinion filed March 31, 1995.

Aronberg, Goldgehn, David & Garmisa, of Chicago (Nathan H. Lichtenstein and David H. Sachs, of counsel), for appellant.

Richard F. Zehnle and John D. Malarkey, both of Vedder, Price, Kaufman & Kammholz, of Chicago, for appellee.

JUSTICE THEIS delivered the opinion of the court:

The plaintiff, Firstmark Standard Life Insurance Company (Firstmark), and the defendant, Superior Bank FSB (Superior), both held mortgages on real estate commonly identified as 222 North Michigan Avenue. This real estate was the *res* of a land trust. After the trust defaulted on its loan, Firstmark filed a complaint seeking foreclosure; subsequently, Superior likewise sought foreclosure. Pursuant to section 2—1005 of the Illinois Code of Civil Procedure, both parties filed motions for summary judgment. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) The trial court granted Firstmark's motion and denied Superior's motion. Superior appeals the decision of the trial court, contending that the trial court erred in failing to apply the doctrine of conventional subrogation to give Superior's mortgage priority over that of Firstmark. We affirm the decision of the trial court.

The facts in this matter are, for the most part, undisputed. At the center of this appeal is the priority of mortgages held on a piece of commercial real estate in downtown Chicago. The property com-

monly known as 222 North Michigan Avenue was the *res* of a land trust under a trust agreement dated October 20, 1980, with Harris Trust and Savings Bank as trustee. Since 1981, ownership of the beneficial interest of the trust was transferred between four companies, all primarily owned by one individual, Richard Fanslow. The companies were Life Assurance Company of Pennsylvania (LACOP), Virick Limited (Virick), Nurses Guaranteed Retirement Life Insurance Company (Nurses), and N.R. Guaranteed Retirement, Inc. (N.R.). The record shows that by 1983, the property was subject to three mortgages. These three prior mortgages amounted to a sum which totalled over $3 million.

In November of 1983, the trust executed a $3.6 million promissory note in favor of Indianapolis Morris Plan Corporation (IMPC), which was secured by a mortgage of the same date. (This mortgage is hereinafter referred to as the Firstmark mortgage.) The mortgage was recorded in Cook County on November 28, 1983.

In December of 1985, the trust executed a second promissory note, for the amount of $7.1 million. This note was made in favor of Lyons Savings and Loan Association, succeeded in interest by Superior Bank.

This note was also secured by a mortgage, which we will refer to as the "Superior mortgage." The mortgage contains the following clause:

> "3.1 *Representations as to the Mortgaged Premises.* Mortgagor represents and covenants that: A. Mortgagor is the holder of the fee simple title to the Mortgaged Premises subject only to the Permitted Encumbrances ***."

Attached to this mortgage is exhibit B, a schedule of permitted encumbrances. Exhibit B states that "LYONS SAVINGS AND LOAN ASSOCIATION [Superior's predecessor in interest] takes subject only to" certain exceptions, including the mortgage held by IMPC securing the $3.6 million debt.

At the request of the beneficial owner, a portion of the proceeds loaned by Superior was used to pay off the three prior mortgages which existed at the time that the IMPC mortgage was secured. The remainder of the proceeds was disbursed to the beneficial owner.

In May of 1987, IMPC assigned its interest in the mortgage to Firstmark.

In September 1988, the trust defaulted on its loan. Firstmark filed an amended verified complaint for foreclosure, seeking to foreclose the mortgage that it held on the property. Firstmark named Lyons Savings and Loan Association (Superior's predecessor in interest) as a defendant in the matter. Superior answered the complaint and filed a counterclaim, also seeking to foreclose the mortgage.

Both parties subsequently filed motions for summary judgment, pursuant to section 2—1005 of the Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) The trial court granted Firstmark's motion and denied the motion of Superior. Superior appeals the decision of the court.

The issue on this appeal essentially amounts to a determination of which party holds the superior interest in this property. Before we address this issue, we must consider Firstmark's contentions that consideration of the priority of the mortgages is barred by collateral estoppel and judicial admissions.

Initially, Firstmark argues that consideration of this issue is barred by the doctrine of collateral estoppel. In a related bankruptcy proceeding, to which both Firstmark and Superior were parties, the bankruptcy court dismissed the petition of N.R. (the beneficial owner of the property), finding that it had not been filed in good faith. In reaching this conclusion, the bankruptcy court incidentally stated that Firstmark had a first mortgage and Superior had the junior mortgage.

■ However, in the bankruptcy matter, Firstmark and Superior were not called upon to litigate the issue before this court—the priority of their mortgages. Determining which party held the superior mortgage was not essential to the bankruptcy court's resolution of the issues before it; the matter of the priority of the mortgages was merely incidentally discussed. " '[C]ollateral estoppel does not apply to issues that might have been decided but were not, nor to matters incidentally decided that were not essential to support the judgment in the prior action.' " (*Lester v. Arlington Heights Federal Savings & Loan Association* (1985), 130 Ill. App. 3d 233, 239, 474 N.E.2d 33, 37, quoting *Godare v. Sterling Steel Casting Co.* (1981), 103 Ill. App. 3d 46, 50, 430 N.E.2d 620.) Therefore, this action is not precluded by collateral estoppel.

■ Firstmark also contends that consideration of Superior's appeal is barred because Superior itself labelled Firstmark's mortgage a "first mortgage" in a series of papers filed with the Federal courts during the conduct of the bankruptcy proceedings. Firstmark argues that Superior's actions in the earlier case amount to a judicial admission. However, a judicial admission does not include an admission made during the course of another court proceeding; such an admission is only an evidentiary admission. (See *Anfinsen Plastic Molding Co. v. Konen* (1979), 68 Ill. App. 3d 355, 386 N.E.2d 108; M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 802.11 (6th ed. 1994).) Therefore, because Superior's statements in the bankruptcy case were not admissions made during the conduct of this case, we cannot now consider them as judicial admissions.

Having disposed of these two preliminary issues, we turn to the main issue on this appeal: the priority of the mortgages.

■ A mortgage becomes effective when it is recorded. This is a long-standing rule that has been codified in our statutes:

> "All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice." Ill. Rev. Stat. 1987, ch. 30, par. 29.

It is likewise long established that this rule gives rise to a presumption that the first mortgage recorded has priority. (See, *e.g.*, *Delano v. Bennett* (1878), 90 Ill. 533.) In this case, Firstmark's mortgage was recorded on November 28, 1983. Superior's mortgage was not recorded until December 30, 1985, more than two years later. By virtue of the recording dates, then, Firstmark clearly possessed a first mortgage.

Moreover, Superior's mortgage specifically acknowledges that it was subject to the Firstmark mortgage. As Firstmark points out, where a mortgage specifically refers to the priority of another mortgage, the mortgagee cannot question the priority of that earlier mortgage. See *Wolkenstein v. Slonim* (1934), 355 Ill. 306, 310, 189 N.E. 312, 314.

Nonetheless, Superior urges us to apply the doctrine of conventional subrogation to elevate its mortgage over that of Firstmark. The trial court declined to apply the doctrine of conventional subrogation, finding that the State of Illinois requires a *written* agreement to support a claim of conventional subrogation.

To resolve this issue, we are aided by only a handful of decisions from this State; most were decided many years before. After reviewing these decisions, we conclude that, to apply the doctrine of conventional subrogation, there must be evidence of an express agreement.

■ In 1897, the Illinois Supreme Court discussed the doctrine of conventional subrogation, defining its limits. "[T]here exists another principle, which is termed conventional subrogation, which results from an equitable right springing from an express agreement with the debtor, by which one advances money to pay a claim for the security of which there exists a lien, by which agreement he is to have an equal lien to that paid off, whereupon he is entitled to the benefit of the security which he has satisfied with the expectation of receiving an equal lien." (*Home Savings Bank v. Bierstadt* (1897), 168 Ill. 618, 624, 48 N.E. 161, 162.) Therefore, the court indicated that, before applying the doctrine of conventional subrogation, it must find that an

express agreement exists. "It is the agreement that the security shall be kept alive for the benefit of the person making the payment which gives the right of subrogation, because it takes away the character of a mere volunteer." (*Bierstadt*, 168 Ill. at 624, 48 N.E. at 162.) The court concluded that, where no injury results to the innocent party, equity will effectuate the true intention of the parties through use of the doctrine of conventional subrogation.

In *Kaminskas v. Cepauskis* (1938), 369 Ill. 566, 17 N.E.2d 558, the only issue on appeal was the relative priority of a mortgage lien and the dower rights of a previously undisclosed wife living in Lithuania. The court determined that the mortgage was superior to the wife's dower rights. The court noted that it would work a hardship and an injustice to subordinate the mortgage broker's rights to those of the wife and therefore it decided to give effect to the "express agreement" between Frank Cepauskis and the mortgage broker. "Reason and justice both demand that the agreement be given effect." *Kaminskas*, 369 Ill. at 571, 17 N.E.2d at 561.

In *Kankakee Federal Savings & Loan Association v. Arnove* (1943), 318 Ill. App. 261, 47 N.E.2d 874, Kankakee Federal loaned to Arnove a sum of money which was secured by a mortgage on the property. Arnove's daughters also claimed an interest in the property. There was testimony to support the allegation that, at the time the mortgage was made, Arnove asserted that his daughters claimed no interest in the property and that if there were such an interest, it would be subordinated to the mortgage holder's. With these assurances, the loan was closed. The court concluded that the testimony showed no intention on the part of the mortgage holder to release or affect its right to a prior lien and it was only upon the assurances of Arnove to that effect that the loan was made. Therefore, because there appeared to be an agreement to the contrary, the court concluded that the law of conventional subrogation preserved the priority of the old mortgage.

In *Western United Dairy Co. v. Continental Mortgage Co.* (1960), 28 Ill. App. 2d 132, 170 N.E.2d 650, the court discussed the doctrine of conventional subrogation at length and defined it in the following manner: "Conventional subrogation gives a third party, who loans a landowner money with which to discharge a prior lien, with the express (though not necessarily written) agreement that the third party will then be in the position of the prior lienor, priority over intervening lienors to the extent of the discharged lien." *Western United*, 28 Ill. App. 2d at 135, 170 N.E.2d at 651.

The linchpin of all these cases, then, is the existence of an express agreement that the interests of a subsequent mortgagor are to be

advanced to a first mortgage. It therefore follows that the courts in Illinois have been unwilling to apply the doctrine of conventional subrogation on the basis of an implied agreement.

■ Our review of the record does not reveal the existence of an express agreement to elevate Superior's mortgage to a first mortgage. However, Superior argues that, when read together, several documents contained in the record indicate that there was an agreement that Superior receive a first mortgage. Superior asks us to consider the title insurance policy and its accompanying escrow agreements as "grounds to find the existence of an agreement."

The title insurance policy and its accompanying documents do not expressly state that Superior is to receive a first mortgage. Instead, the escrow agreements state that the title insurance policy would insure against Superior's "loss by reason of defects in the title *** either without mention of [the Firstmark mortgage] or insuring against loss by reason [of the Firstmark mortgage]." The escrow documents further indicate that the beneficial owner was to deposit the full amount of the Firstmark mortgage in an account with Intercounty Title Company of Illinois to be held in escrow. We fail to see how this type of title insurance policy can lead to the conclusion that there was an agreement that Superior was to receive a first mortgage.

Superior makes no attempt to explain the clear language of its mortgage. The Superior mortgage, entered into at the same time that the title insurance policy was procured, specifically states that the mortgage was subject to the Firstmark mortgage. Consequently, at the time Superior made its loan, it expressly agreed to not a first mortgage, as it contends, but a junior mortgage.

Therefore, we cannot find that there was any evidence of an agreement that Superior was to have its interests subrogated. None of the arguments raised in Superior's brief have convinced us otherwise. We therefore refuse to apply the doctrine of conventional subrogation and we affirm the decision of the trial court.

Affirmed.

HOFFMAN, P.J., and S. O'BRIEN, J., concur.