BRIAN GREEN, by His Mother, Helen Fritz, as Plenary Guardian, *et al.*, Plaintiffs-Appellants, v. EDGAR JACKSON, Indiv. and as Agent, Servant and Employee of Wells Fargo Guard Services, Inc., a Division of B.P.S. Guard Services, Inc., *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—94—1226

Opinion filed June 30, 1997.

David A. Novoselsky & Associates, of Chicago (David A. Novoselsky and Linda A. Bryceland, of counsel), for appellants.

Peterson & Ross, of Chicago (Donald A. Murday and Douglas J. Varga, of counsel), for appellees Wells Fargo Guard Services, Inc., and Edgar Jackson.

Wayne F. Plaza and Edward P. Dismukes, both of Chicago, for appellee Amoco Oil Co.

JUSTICE THEIS delivered the opinion of the court:

Plaintiffs sued A.C.A. Management Services Company, a division of the Amoco Oil Company (Amoco), Edgar Jackson, and Wells Fargo Guard Services, Inc., for injuries suffered by Brian Green on the premises of an Amoco service station. The court entered a directed verdict as to certain claims against Amoco. As to the remaining count, the jury returned a verdict in favor of Amoco. The jury found against Jackson and Wells Fargo and awarded the plaintiff $3.2 million in damages. However, the jury reduced the award by 75% as the result of Brian Green's comparative negligence. On appeal, plaintiffs argue: (1) the trial court erred in ruling that Brian Green was competent to testify; (2) the trial court erred in allowing defendant Jackson to explain a guilty plea entered in a criminal proceeding; (3) the trial court erred in directing a verdict in favor of Amoco as to certain negligence claims; (4) the verdict was against the manifest weight of the evidence; and (5) the trial court erred in instructing the jury. We affirm the judgment against Wells Fargo and Edgar Jackson. As to Amoco, we affirm the trial court's directed verdict, but reverse as to the erroneous jury instruction and remand for a new trial.

In February of 1986, Roger Green and his son Brian Green stopped at an Amoco gas station located on the corner of Central and Diversey in Chicago, Illinois. Brian exited the vehicle to purchase cigarettes at the Amoco minimart. In the meantime, Edgar Jackson approached the Greens' vehicle. Jackson was a Wells Fargo security guard hired by Amoco to prevent patrons of the 1-2-3 Disco Lounge from parking in Amoco's lot. Jackson and Roger Green began arguing. Brian returned to the vehicle, heard Jackson and Roger arguing, and began to struggle with Jackson. Roger Green joined the struggle. A shot was fired from Jackson's gun, which hit Brian Green between the eyes. Brian's mother and father filed suit against Amoco, Edgar Jackson, and Jackson's employer, the Wells Fargo Guard Services, Inc.

In count I of their four-count complaint, plaintiffs claimed that Wells Fargo failed to comply with certain statutes and negligently permitted Jackson to work as an armed security guard. In count II, plaintiffs alleged that Wells Fargo failed to investigate or train Edgar Jackson for his security guard position. In count III, plaintiffs claimed that Edgar Jackson negligently reported to work without proper uniform and shot Brian Green without legal justification. In count IV, plaintiffs alleged that Amoco failed to: (1) comply with the stan-

dard of care for employing security services; (2) establish reasonable security policies; (3) establish policies for hiring security services; (4) establish procedures for training security guards; (5) supervise Edgar Jackson; (6) investigate whether Jackson was qualified to be a security guard; and (7) prohibit Jackson from working without a uniform while carrying a concealed weapon.

At trial, both parties introduced eyewitness testimony. Leo Baranowicz testified that he was patronizing the 1-2-3 Disco Lounge on the night of the incident. Earlier in the evening, Baranowicz drove into the Amoco station to use the phone. Jackson approached Baranowicz and told him to remove his car from the Amoco lot. Baranowicz testified that Jackson was wearing a green army jacket and that he did not notice if Jackson was wearing a badge or other insignia of authority. Later, Baranowicz observed Jackson "shooing" other cars from the lot.

At approximately 1:30 a.m., Baranowicz noticed the Greens' vehicle enter the Amoco station. Baranowicz testified that he observed Jackson's altercation with the Greens. According to Baranowicz, Jackson pulled out his revolver, aimed, and shot Brian Green. The defendants introduced evidence undermining Baranowicz's credibility. Specifically, the defendants established that Baranowicz: (1) offered three different versions of the facts prior to trial, (2) admitted he was angry with Jackson for forcing Baranowicz to leave the lot, and (3) had been convicted of two prior felonies.

James Esbrook was working at the Amoco station when the incident occurred. Esbrook testified that he overheard Roger Green tell Jackson, "What are you doing in this neighborhood, nigger, why don't you leave those people alone?" Esbrook stated that while the Greens were beating Jackson and grabbing at his sweater, Jackson never struck back. Esbrook's view of the parties was obstructed when the shot was fired. When Jackson entered the minimart, his face was swollen.

Terrence Dyra was a customer at the Amoco station when the Greens arrived. Dyra overheard Roger Green say, "What are you looking at, nigger?" before Roger exited his vehicle and began beating Jackson. Dyra testified that Brian joined the fight as well. Terrence did not see Edgar Jackson shoot Brian Green.

Edgar Jackson testified that as Brian Green attempted to enter the minimart, Jackson informed Brian that it was locked. Brian responded that Jackson should "fuck [himself] and stuck his finger in the air." Roger Green then rolled down the car window and said, "What are you looking at nigger?" Roger exited the vehicle and asked Jackson, "What's a nigger like you doing up here in this

neighborhood anyway?" Jackson told Roger that he was drunk and should leave. Jackson then felt someone hit him from behind and stick something that felt like a gun in his back. The Greens began beating Jackson. Jackson testified that the Greens grabbed at his sweater and exposed Jackson's revolver.

Jackson testified that he heard Roger Green yell, "The nigger's got a gun," and that the Greens reached for Jackson's weapon. In fear of losing his weapon, Jackson drew his gun. Brian Green grabbed the barrel of the gun. Jackson stated that, during the struggle, the gun discharged and Brian Green was shot in the head.

The parties also presented evidence as to Edgar Jackson's training and Amoco's procedures for hiring, training, and supervising employees. Dr. Norman Bottom, a self-employed professional security consultant, testified that Amoco breached a duty of care because he believed there was no uniformed, supervised security at the Amoco station on the night of the shooting. Bottom stated that Jackson was not wearing a uniform or a badge, and he noted that Amoco had no policy in place for supervising the newly hired Jackson.

Amoco's expert, Chris McGoey, testified that Amoco communicated to Wells Fargo what its particular needs were for the site. McGoey stated that he did not believe that Amoco was negligent in hiring Wells Fargo or Jackson. Amoco area manager John Ridgeway stated that he did not make a decision as to whether an armed or unarmed security guard should be hired, but left that decision up to Wells Fargo. Amoco moved for a directed verdict as to plaintiffs' claims against Amoco. The trial court granted the motion as to all of plaintiffs' allegations against Amoco, except plaintiffs' claim that Amoco's failure to exercise reasonable care in hiring Wells Fargo to provide security was a proximate cause of Brian's injuries.

After deliberations, the jury returned a verdict in favor of Amoco. The jury found both Wells Fargo and Edgar Jackson negligent and awarded Brian Green damages in the amount of $3.2 million. However, the jury determined Brian Green was comparatively negligent and reduced the award by 75%. Plaintiffs filed this appeal.

■ Plaintiffs first argue that the trial court erred in denying their motion *in limine* to prevent Edgar Jackson from testifying. A probate court determined that Brian Green was incompetent. As such, plaintiffs claim that the Dead-Man's Act should have barred Jackson's testimony as to his altercation with Brian. See 735 ILCS 5/8—201 (West 1992). The Dead-Man's Act provides:

> "In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the ac-

tion shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability ***." 735 ILCS 5/8—201 (West 1992). The Act defines a person under a legal disability as one "who is adjudged by the court in the pending civil action to be unable to testify by reason of mental illness, mental retardation or deterioration of mentality." 735 ILCS 5/8—201 (West 1992).

■ A witness is presumed competent to testify and the challenging party bears the burden of overcoming that presumption. *Clark v. Otis Elevator Co.*, 274 Ill. App. 3d 253, 653 N.E.2d 771 (1995). The mere fact that a witness has been deemed disabled in regard to his person or finances does not render that witness incompetent to testify, but merely goes to the weight the trier of fact might afford such testimony. *Clark*, 274 Ill. App. 3d 253, 653 N.E.2d 771. The determination of whether a witness is competent to testify is within the sound discretion of the trial court. *People v. Williams*, 147 Ill. 2d 173, 588 N.E.2d 983 (1991), *cert. denied*, 506 U.S. 876, 121 L. Ed. 2d 156, 113 S. Ct. 218 (1992). The trial court may make such a determination by means of preliminary inquiry or by observing the witness. *Williams*, 147 Ill. 2d 173, 588 N.E.2d 983, *cert. denied*, 506 U.S. 876, 121 L. Ed. 2d 156, 113 S. Ct. 218 (1992). In discussing the scope of the inquiry, we note:

"Although there is no rigid formula to apply to determine whether a witness is competent [citation], courts have held that the trial judge should consider four factors: the ability of the witness to receive correct impressions from his senses, to recollect those impressions, to understand questions, and to appreciate the moral duty to tell the truth." *Clark v. Otis Elevator Co.*, 274 Ill. App. 3d 253, 256-57, 653 N.E.2d 771, 774 (1995).

■ In the instant case, the parties presented conflicting expert testimony as to whether Brian Green could observe, recollect, understand questions, and appreciate the moral duty to tell the truth. Plaintiff's expert witness, Dr. Bruce Ketel, testified that after the accident Brian was disabled and suffered from seizures. In Dr. Ketel's opinion, Brian could not understand questions or articulate answers. Dr. Garron, a clinical psychologist, testified that he did not believe that Brian's ability to comprehend questions and answer them honestly was at a level that would allow him to testify at trial.

Defendants Jackson and Wells Fargo presented the testimony of Dr. Randy Georgemiller, an expert in neuropsychology. Dr. Georgemiller tested and examined Brian and found that Brian could comprehend and answer questions. Based upon Brian's test perfor-

mance and interview, Dr. Georgemiller stated that he believed Brian was exaggerating his injuries.

In addition to the expert testimony, the trial court reviewed over 650 pages of Brian Green's deposition testimony. Based upon this preliminary inquiry, the trial court concluded that Brian Green was competent to testify. However, the trial court invited the plaintiffs to present Brian Green for an evidentiary hearing if they sought to further challenge Brian's competency. The plaintiffs failed to present Brian Green for an evidentiary hearing or offer of proof.

Under the facts of this case, we reject plaintiffs' contention that Brian's prior adjudication as a disabled person required further inquiry into his competency. See *Clark v. Otis Elevator Co.*, 274 Ill. App. 3d 253, 653 N.E.2d 771 (1995). A review of the record reveals that the trial court did not abuse its discretion in ruling that Brian Green was competent to testify. Accordingly, we find that the Dead-Man's Act did not bar Edgar Jackson's testimony.

■ Next, plaintiffs argue that the trial court should not have permitted Jackson to explain or contradict his plea of guilty to the criminal charges. Plaintiffs claim that Jackson should have been judicially estopped from offering a theory of self-defense because it tended to explain and contradict his guilty plea.

We acknowledge that the doctrine of judicial estoppel bars witnesses from explaining or controverting judicial admissions. *De Witt County Public Building Comm'n v. County of De Witt*, 128 Ill. App. 3d 11, 469 N.E.2d 689 (1984). Contrary to plaintiffs' assertion, however, judicial admissions do not include admissions made during the course of other court proceedings. *Firstmark Standard Life Insurance Co. v. Superior Bank FSB*, 271 Ill. App. 3d 435, 649 N.E.2d 465 (1995). Rather, such statements constitute evidentiary admissions. *Firstmark Standard*, 271 Ill. App. 3d 435, 649 N.E.2d 465; *Anfinsen Plastic Molding Co. v. Konen*, 68 Ill. App. 3d 355, 386 N.E.2d 108 (1979). Evidentiary admissions may be controverted or explained. *Williams Nationalease, Ltd. v. Motter*, 271 Ill. App. 3d 594, 648 N.E.2d 614 (1995). Because Edgar Jackson's guilty plea was an admission in another court proceeding, that plea constituted an evidentiary admission. *People v. Sheehan*, 261 Ill. App. 3d 325, 331, 633 N.E.2d 151, 155 (1994), citing *Wright v. Stokes*, 167 Ill. App. 3d 887, 891-92, 522 N.E.2d 308, 311 (1988). As such, we find that the trial court did not err in permitting Jackson's testimony.

■ Next, plaintiffs contend that because Jackson's guilty plea could not be controverted or explained, the trial court erred in instructing the jury as to Brian Green's comparative negligence. On the issue of comparative negligence, the trial court instructed the jury:

"It was the duty of the plaintiff before and at the time of the occurrence, to use ordinary care for his own safety. A plaintiff is contributorly [*sic*] negligent if, one, he fails to use ordinary care for his own safety and, two, his failure to use such ordinary care is the proximate cause of the alleged injury.

The plaintiff's contributory negligence, if any, does not bar his recovery. However, the total amount of damages to which he would otherwise be entitled is reduced in proportion to the amount of his negligence. This is known as comparative negligence."

Having already determined that Edgar Jackson's testimony was appropriate, we find that there is sufficient evidence in the record of Brian Green's negligent conduct. The defendants were entitled to have the jury instructed as to their theory of the case. *Colls v. City of Chicago*, 212 Ill. App. 3d 904, 571 N.E.2d 951 (1991). Based upon the evidence properly presented to the jury, we find that the trial court did not err in tendering the comparative negligence instruction.

Plaintiffs then challenge the trial court's order granting Amoco's motion for a directed verdict as to certain claims against Amoco. Specifically, the trial court held that there was insufficient evidence to establish that: (1) Amoco had an obligation to establish reasonable security policies; (2) Amoco had an obligation to supervise Jackson; (3) Amoco had an obligation to prohibit Jackson from reporting for duty out of uniform and carrying a concealed weapon; and (4) Amoco breached an industry standard for retaining armed as opposed to unarmed security services. The trial court allowed plaintiff to proceed against Amoco on the sole issue of whether Amoco was negligent in retaining Wells Fargo. On appeal, plaintiffs claim that they presented sufficient evidence to survive Amoco's motion for a directed finding.

■ A negligence action requires a plaintiff to submit facts establishing the existence of a duty owed by the defendant. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 554 N.E.2d 223 (1990). Whether Amoco owed the Greens a duty is a question of law for the trial court to determine, subject to *de novo* review. *Rodriguez v. Norfolk & Western Ry. Co.*, 228 Ill. App. 3d 1024, 593 N.E.2d 597 (1992). A directed finding is appropriate when the evidence, viewed in a light most favorable to the plaintiffs, so overwhelmingly favors the defendant that no contrary verdict could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504 (1967). "The direction of a verdict does not require a complete absence of evidence of the side against which the verdict is directed, for the right to resolution of issues by the jury exists only if there are factual disputes of some substance." *Poelker v. Warrensburg-Latham Community Unit School District No. 11*, 251 Ill. App. 3d 270, 276, 621 N.E.2d 940, 946 (1993).

■ In the instant case, the plaintiffs primarily rely on the testimony of their expert witness, Dr. Norman Bottom, to establish that Amoco had a duty to develop a security policy and to investigate and supervise Wells Fargo's employees. Dr. Bottom testified that, in his opinion, Amoco had such a duty. Dr. Bottom stated that he relied upon a number of treatises in reaching his conclusions. Dr. Bottom admitted, however, that none of these treatises outlined a standard of care for companies such as Amoco. Further, a review of Dr. Bottom's testimony fails to reveal any evidence as to a standard within the minimart industry for retaining, training, or supervising contract security services. We agree with the trial court's assessment of Dr. Bottom's testimony as conclusory. Accordingly, we affirm the trial court's ruling that plaintiff presented insufficient evidence to survive Amoco's motion for a directed finding.

■ Next, plaintiffs argue the jury's finding that Brian Green was 75% at fault for his injury was against the manifest weight of the evidence. The Illinois Supreme Court has stated that a verdict is not against the manifest weight of the evidence unless "an opposite conclusion is apparent, or when the findings appear to be unreasonable, arbitrary, or not based on evidence." *Leonardi v. Loyola University*, 168 Ill. 2d 83, 106, 658 N.E.2d 450, 461 (1995). The defendants presented evidence that Brian and Roger Green were intoxicated and disorderly. The Greens shouted racial slurs at Edgar Jackson and attacked him. In addition, Edgar Jackson testified that Brian Green attempted to confiscate Jackson's revolver and grabbed the barrel of the gun. In light of this evidence, we cannot conclude that the jury's verdict was against the manifest weight of the evidence.

■ Finally, plaintiffs claim that the trial court erred in instructing the jury as to Amoco's duty toward Brian Green. The trial court informed the jury that Amoco claimed the following affirmative defense:

"That plaintiff's conduct exceeded the manner of use which A.C.A./Amoco might reasonably expect in connection with any express or implied invitation to plaintiff to enter its premises. When plaintiff entered the premises in a state of intoxication, and when plaintiff started an altercation, he then became a trespasser on the premises."

The trial court then instructed the jury:

"If you find that Brian Green at the time of the injury had exceeded the lawful purpose for which he entered onto the premises of A.C.A./Amoco, then Brian Green was not an invitee and was not using the premises for a purpose for which he was

invited or permitted or for which A.C.A. might reasonably have expected him to use the premises, then your verdict should be in favor of A.C.A. and against the plaintiff."

Plaintiffs argue that this instruction is an inaccurate statement of Illinois law. We agree and reverse.

The Illinois Supreme Court has defined a trespasser as "one who enters upon the premises of another with neither permission nor invitation and intrudes for some purpose of his own, or at his convenience, or merely as an idler." *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 228, 665 N.E.2d 1260, 1268 (1996). While a landowner owes invitees a duty of ordinary care, a landowner owes a trespasser only a duty to refrain from willful and wanton acts. *Rhodes*, 172 Ill. 2d 213, 665 N.E.2d 1260. Defendants do not dispute this but claim that one who enters the premises as an invitee, as the Greens did, may lose their status and become trespassers. In support of their argument, defendants cite to the 1954 Oregon decision in *Hansen v. Cohen*, 203 Or. 157, 276 P.2d 391 (1954), holding that persons who use premises for a purpose not intended by the invitee assume the role of trespassers. In further support, Amoco directs us to the following statement in *Avery v. Moews Seed Corn Co.*, 131 Ill. App. 2d 842, 845, 268 N.E.2d 561, 564-65 (1971): "the duty [toward an invitee] *** extends only to that manner of use which the owner might reasonably expect in connection with the express or implied invitation."

We note, however, that the language defendants rely upon in *Avery* is mere *dicta*, as the court actually found the plaintiff's act of traveling to an area of the premises to which he was not invited rendered him a trespasser. *Avery*, 131 Ill. App. 2d 842, 268 N.E.2d 561. To this extent, *Avery* is consistent with the rest of Illinois case law on the issue of how an invitee loses his status and becomes a trespasser. See generally *Cockrell v. Koppers Industries, Inc.*, 281 Ill. App. 3d 1099, 667 N.E.2d 676 (1996). In Illinois, an invitee exceeds the scope of the invitation only when the invitee has traveled to an area to which he was not invited. See, *e.g., Rodriguez v. Norfolk & Western Ry. Co.*, 228 Ill. App. 3d 1024, 593 N.E.2d 597 (1992). There is no authority in Illinois which supports Amoco's position that an invitee exceeds the scope of the invitation by entering the premises intoxicated and starting an altercation. Because the instruction tendered by the trial court represents an unprecedented extension of Illinois law, we find that the trial court abused its discretion.

We recognize that not every error in tendering instructions necessitates a new trial. *Amstar Corp. v. Aurora Fast Freight*, 141 Ill. App. 3d 705, 490 N.E.2d 1067 (1986). Generally, a reviewing court will not remand for a new trial unless the faulty instruction clearly

misled the jury and prejudiced the appellant. *LaPook v. City of Chicago*, 211 Ill. App. 3d 856, 570 N.E.2d 708 (1991). In the instant case, the challenged instruction enabled the jury to find in favor of Amoco even if the jury determined that Amoco failed to exercise ordinary care in hiring Wells Fargo. This erroneous instruction clearly resulted in prejudice to the plaintiffs. Accordingly, we reverse the trial court's ruling and remand for a new trial on the sole issue of whether Amoco failed to exercise ordinary care in hiring Wells Fargo. We affirm as to the trial court's entry of the directed findings and as to Wells Fargo and Edgar Jackson.

Affirmed in part and reversed in part; remanded in part for a new trial.

CAHILL, J., concurs.

JUSTICE O'BRIEN, dissenting:
I disagree with the majority on the last and dispositive issue: that the court's instruction as to the status of the plaintiff as an invitee or trespasser was error and required reversal and remandment.

The majority states, "In Illinois, an invitee exceeds the scope of the invitation *only when* the invitee has traveled to an area to which he was not invited." (Emphasis added.) 289 Ill. App. 3d at 1011.

Admittedly, Illinois cases have emphasized the geography of the premises when addressing the scope of the invitation. However, Illinois Pattern Jury Instructions, Civil, No. 120.07.02 (3d ed. 1990) clearly contemplates an invitee exceeding the scope of the invitation by the manner of *use* of the premises by the plaintiff. IPI Civil 3d No. 120.07.02 states:

"[_____owed] [An (owner) (occupant) owes]
  defendant's name

[_____] [an invitee] [a person on his property at his
  plaintiff's name

invitation or with his permission] the duty to use ordinary care to see that [activities] [operations] on the premises [were] [are] conducted with ordinary care for [_____'s] [the
                                                 plaintiff's name

invitee's] [that person's] safety. This duty extends [only to that portion of the premises onto which the person has either expressly or impliedly been (invited) (or) (given permission) to use or to that portion the (owner) (or) (occupant) might reasonably expect him to use in connection with the (invitation) (permission)] [and] [only to that manner of use which the (owner) (occupant) might reasonably expect in connection with the express or implied (invitation) (or) (permission)].

However, if _____ [was not an invitee] [or] [was on
                plaintiff's name
a portion of the premises to which he was not expressly or
impliedly (invited) (or) (permitted) (or) (which the (owner) (or)
(occupant) would not reasonably expect him to use in connection
with the (invitation) (or) (permission))] [or] [was using the
premises for a purpose other than that for which he was
(invited) (or) (permitted) (or) (for which the (owner) (occupant)
might reasonably have expected him to use the premises],
then it was the duty of the defendant to refrain from wilful
and wanton conduct which would endanger the safety of the
plaintiff. [However, if (defendant) (_____) knew, or
                                    defendant's name
in the exercise of ordinary care, should have anticipated
that plaintiff was in a place of danger, then (defendant)
(_____) had a duty to exercise ordinary care for
  defendant's name
the safety of plaintiff.]" Illinois Pattern Jury Instructions, Civil,
No. 120.07.02 (3d ed. 1995).

Although here the trial court did not use the pattern instruction,
the given instruction paraphrased the IPI instruction. Accordingly,
the use of such an instruction does not represent an "unprecedented
extension of Illinois law" but one that is contemplated by the Illinois
Pattern Jury Instructions.

Accordingly, I respectfully dissent.