BRUCE E. COCKRELL, Plaintiff-Appellee, v. KOPPERS INDUSTRIES, INC., Defendant-Appellant.

First District (5th Division)   No. 1—94—3877

Opinion filed June 21, 1996.

James B. Vogts, of Wildman, Harrold, Allen & Dixon, of Chicago, for appellant.

Michael B. Barrett and George J. Jasinski, both of Barrett, Sramek & Jasinski, of Palos Heights, for appellee.

JUSTICE HOURIHANE delivered the opinion of the court[1] :

Plaintiff, Bruce Cockrell, filed a two-count complaint against defendant, Koppers Industries, Inc. (Koppers), sounding in negligence and wilful and wanton misconduct. In the complaint, plaintiff alleged that he was severely burned while working on Koppers' property.

---

[1]Justice Thomas J. O'Brien originally sat on the panel in this appeal. Upon Justice O'Brien's retirement, Justice Hourihane substituted in the decision of this appeal. He has read the briefs and listened to the tape of oral argument.

The case eventually proceeded to trial, and a jury returned a verdict finding defendant negligent. Koppers then filed a motion for judgment notwithstanding the verdict (judgment *n.o.v.*) or, alternatively, for a new trial. The circuit court denied the motion, and Koppers appealed. 134 Ill. 2d R. 303(a). We reverse the denial of the motion for judgment *n.o.v.* and remand the matter to the circuit court with directions to enter judgment for defendant.

## BACKGROUND

Plaintiff was a certified hazardous material worker (which, as defined by OSHA, means that plaintiff had completed certain minimum training in handling hazardous materials) employed by F.G. Enterprises (F.G.), a company which provides various on-site maintenance services. Koppers, a coal tar producer, operates an industrial facility in Stickney, Illinois. The facility consists of, among other things, several tanks capable of holding 500,000 gallons of tar. Pursuant to an agreement between the parties, F.G. agreed to assign workers to Koppers on a purchase order—or as needed—basis. Under this arrangement, Koppers' tar plant maintenance supervisor would issue a general work assignment to F.G.'s on-site supervisor, who would then direct F.G.'s employees as to the particulars of the task. In this way, F.G. retained control over its employees as to the specific details of each project and Koppers never gave any direction to or exercised any control over plaintiff or F.G.'s other employees.

Beginning in early May 1989, Al Tolbert, F.G.'s on-site supervisor, instructed plaintiff and other co-workers to dig a series of holes in the area near the holding tanks. The holes, which measured approximately three feet in diameter and six feet in depth, were to be used for anchoring posts. These posts would, in turn, support a new tar pipeline. However, due to a high water table, groundwater inadvertently seeped into the holes. As a result, Tolbert further directed plaintiff and others to pump the water out of the holes and "squeegee it" toward a trench drain located approximately 100 feet away.

On the evening of May 8, 1989, a valve gasket on an existing pipeline failed, spilling hot tar onto the ground and into the holes. Some of the tar eventually accumulated along the drain near a railroad track designated as "Track 5." Once the tar cooled, it became more viscous and blocked further drainage. To remedy the situation, William DePue, Koppers' tar plant maintenance supervisor, placed hot water and steam hoses in the holes. DePue intended to "steam purge" the tar and water mixture out of the holes and into the drain.

On the next day, DePue and other Koppers employees tried to pump out the tar and water mixture. After several unsuccessful at-

tempts to pump out the tar, DePue decided to leave the hoses in the holes and continue the steam purging. In the meantime, DePue placed forklift pallets over the holes and blocked access to the area with barricade horses and yellow caution tape.

On the following morning, DePue met with Tolbert and Duane Grahovec, F.G.'s owner, informed them that Koppers had been steam purging the holes throughout the night and told them of the hazards. He also instructed them to have their workers clean "between 1 and 2 tank center lines," an area approximately 50 feet away from the designated area where the holes were being steam purged.

Later that same morning, plaintiff arrived at Koppers' plant and met with Tolbert at F.G.'s on-site "bungalow" or work station. Contrary to DePue's instructions, Tolbert directed plaintiff and a co-worker, John Woodward, to "squeegee out" the tar-filled holes and force the liquified tar down to Track 5. Tolbert did not inform plaintiff or Woodward that the holes were being steam purged.

In order to reach the holes, plaintiff and Woodward stepped over one of the pipelines and under the caution tape. By now, the area surrounding the holes was covered by approximately one inch of tar. According to plaintiff, the site appeared as if it were a "black lake" and visibility was hampered by the steam.

Once the men reached the holes, they each removed a pallet and began clearing off the tar. At that point, plaintiff saw Woodward partially slip into one of the holes and cry out, "This shit is hot." Plaintiff told Woodward that they should not be working in the area, and he then left to get Woodward a new set of work boots. Upon returning, plaintiff lost his balance and fell into one of the uncovered holes. Plaintiff suffered severe injuries.

At the close of all the evidence, the circuit court instructed the jury as follows:

> "Koppers Industries, Inc., owed Bruce E. Cockrell, a person on its property at its invitation or with its permission, the duty to use ordinary care to see that the premises were in a reasonably safe condition. That duty extends only to that portion of the premises onto which the person has either expressly or impliedly been given an invitation or permission to use or to that portion the owner and occupant might reasonably expect him to use in connection with the invitation or permission."[2]

The jury ultimately returned a verdict in plaintiff's favor in the

---

[2]Elsewhere, the court instructed the jury that plaintiff had the burden of proving the following six propositions:

> (i) that there was a condition on Koppers' property which presented an unreasonable risk of harm;

amount of $450,000. That amount was later reduced by 40% based on the plaintiff's contributory negligence. Koppers filed a post-trial motion for judgment *n.o.v.* or alternatively for a new trial, alleging that the evidence did not support a finding that it breached a duty owed to plaintiff. Argument was heard and the motion was denied. Koppers appealed. 134 Ill. 2d R. 303(a).

## ANALYSIS

On appeal, defendant contends that the trial court erred in denying his post-trial motion for judgment *n.o.v.* or for a new trial. Defendant specifically argues that, as a matter of law, the plaintiff failed to establish that defendant breached its duty to the plaintiff.

■ A judgment *n.o.v.* should be entered only in those cases in which all of the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Ward v. K mart Corp.*, 136 Ill. 2d 132 (1990).

■ The essential elements of a cause of action based on common law negligence are the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507 (1987). The principal issue before us is what type of duty, if any, Koppers owed plaintiff in the current circumstances. Whether or not a duty exists is a question of law (*Flath v. Madison Metal Services, Inc.*, 212 Ill. App. 3d 367, 372 (1991)) and is therefore subject to *de novo* review.

■ Illinois law defines the duty of one who controls the premises by identifying the status of the entrant, who is either an "invitee" or a "trespasser." *Roland v. Langlois*, 945 F.2d 956, 957 (7th Cir. 1991). A possessor of land owes an invitee a duty to exercise reasonable care in maintaining the premises. *Smith v. Chicago Park District*, 269 Ill. App. 3d 812, 817 (1995), *appeal granted*, 162 Ill. 2d 581 (1995).

---

(ii) that Koppers knew, or in the exercise of ordinary care should have known, that the condition involved an unreasonable risk of harm;

(iii) that Koppers should have anticipated that persons on the premises would not discover or realize the danger, or would otherwise fail to protect themselves against it;

(iv) that Koppers acted or failed to act in one or more of the ways stated in the jury instructions and that in so acting or failing to act, Koppers was negligent;

(v) that plaintiff was injured; and

(vi) that the condition of Koppers' property was a proximate cause of plaintiff's injury.

However, this duty extends only so far as the invitation extended to the invitee. *Briney v. Illinois Central R.R. Co.*, 401 Ill. 181, 188 (1948). Thus, "if an invitee deviates from the accustomed way or goes to a place other than that place covered by the invitation, the owner's duty of care to him as an invitee ceases forthwith." *Rodriguez v. Norfolk & Western Ry. Co.*, 228 Ill. App. 3d 1024, 1044 (1992).

In this case, while the defendant did invite the plaintiff onto its premises, the evidence indicates that plaintiff's injury occurred on a part of defendant's premises onto which he was not invited. DePue testified that he instructed both Grahovec, the owner of F.G., and its on-site supervisor, Tolbert, to clean an area approximately 50 feet west of the holes. According to DePue, he specifically told them "to use two or three men, whatever they [felt was] necessary. And I wanted to clean the material from between 1 and 2 tank center lines—center of 1 and 2 tank and squeegee or shovel the material to the 5 track trench." DePue further testified that, as his report of the plaintiff's injury indicated, he informed Tolbert and Grahovec about the steam purging process of the holes and the hazards it presented.

However, plaintiff testified that, in contravention of DePue's explicit directions, plaintiff received orders from Tolbert to "squeegee" the tar out of the holes:

"MR. JASINSKI [plaintiff's attorney]: Who [*sic*] did you receive those instructions from?

PLAINTIFF: Big Al [Tolbert].

Q. What were the instructions that Big Al gave you?

A. My instructions from him was [*sic*] to head over to the holes that we dug and squeegee them out and squeegee the liquid down to Track 5, squeegee out the holes.

\* \* \*

Q. Are you certain that Big Al said to squeegee the water out of the holes?

A. Yes.

Q. Did Big Al ever tell you to not go anywhere near the holes?

A. No.

\* \* \*

Q. Did Big Al ever tell you to start squeegeeing from the center of the tanks and then move along to the track?

A. No. My instruction was to squeegee out the holes."

Thus, the record affirmatively establishes that Tolbert ordered the tar removed from the post holes, not DePue. DePue testified that he instructed Tolbert that the work to be performed by the defendant was limited to the area between tanks 1 and 2. Thus, the invitation extended to plaintiff was limited to the area between tanks 1 and 2, and defendant's duty to exercise reasonable care applied only to that area.

Plaintiff nevertheless argues that, even though DePue's testimony was uncontradicted, this court should not second-guess the jury's determination as to the credibility of DePue's testimony on this issue. Plaintiff asserts that the jury could have reasonably found DePue's testimony incredible on the following bases. First, plaintiff argues that a report of the plaintiff's injury prepared by DePue two days following the event failed to corroborate his trial testimony and indicated that he had informed the plaintiff's supervisors (1) that the defendant was in the process of purging the holes with hot water, and (2) that plaintiff's work was to be limited to the area between tanks one and two. Second, plaintiff contends that the jury may have reasonably concluded that because of DePue's continued employment by the defendant his testimony was not credible.

■ As plaintiff correctly notes, even uncontradicted evidence should not serve as a basis for overturning a jury verdict if the jury might reasonably have doubted the credibility or accuracy of the witnesses who testified. *Laport v. Lake Michigan Management Co.*, 252 Ill. App. 3d 221, 226 (1991), citing *McClure v. Cywinski*, 686 F.2d 541 (7th Cir. 1982). Thus, while the jury is generally the sole judge of the weight and credibility of testimony, this rule is subject to the caveat that where the testimony of a witness is neither contradicted, either by positive testimony or by circumstances, nor inherently improbable, and the witness has not been impeached, that testimony cannot be disregarded by a jury. *Bucktown Partners v. Johnson*, 119 Ill. App. 3d 346, 351 (1983). Accordingly, no judgment which necessarily finds otherwise can stand. *McClure v. Cywinski*, 686 F.2d at 548, quoting *Chicago, Rock Island & Pacific Ry. Co. v. Howell*, 401 F.2d 752, 754-55 (10th Cir. 1968).

■ At trial, plaintiff did attempt to discredit DePue by referring to selective portions of an injury report that DePue had completed two days after the incident. According to plaintiff, the report fails to corroborate DePue's testimony regarding his instructions to Tolbert and Grahovec. But as defendant pointed out at trial, the injury report actually contained two pages in addition to the cover sheet. On these additional pages, DePue clearly indicates that he instructed F.G. to limit its work to the area between tanks 1 and 2:

"MR. JANINSKI: Mr. DePue, when [plaintiff's attorney] examined you a few minutes ago, he had you read the first two sentences in your narrative report attached to your foreman's report of the injury, which is Plaintiff's Exhibit No. 6. Would you read the third sentence beginning with the word they?

PLAINTIFF: 'They were made aware that we had been purging four pipe support holes with hot water from the mixing stations

at 21 and 24 tank water stations. Also, we were using 90 pound steam with the hot water on the center two holes.'

\* \* \*

Q. When you referred to they were made aware at the very beginning of that sentence, were you referring to Al Tolbert and Duane Grahovec?

A. Correct."[3]

DePue's testimony regarding his instructions to Tolbert and Grahovec was never contradicted. In fact, neither Tolbert nor Grahovec testified at trial. Furthermore, DePue's testimony was not impeached nor was it inherently improbable. Moreover, we note tangentially that during argument on appeal, plaintiff's counsel acknowledged that he had taken DePue's deposition at least a year prior to trial and was aware of the basic substance of his testimony. Nevertheless, plaintiff's counsel chose not to secure testimony from Tolbert, who was available, nor did he call Grahovec or explain his failure to do so by asserting that he was unavailable. Under these circumstances, DePue's testimony simply could not be disregarded by the jury.

Moreover, while other jurisdictions provide for additional exceptions to the general rule regarding uncontradicted evidence, our supreme court has clearly indicated that in Illinois the exceptions are limited to those identified above. *Bucktown Partners v. Johnson*, 119 Ill. App. 3d 346, 353-55 (1983), citing *People ex rel. Brown v. Baker*, 88 Ill. 2d 81 (1981); *Bazydlo v. Volant*, 164 Ill. 2d 207, 215 (1995). As the supreme court has explained, although "the credibility of witnesses and the weight to be accorded their testimony are typically jury considerations [citations], a jury cannot arbitrarily or

---

[3]The report—verbatim—states in pertinent part:

"At 6:55/ a.m. on 5-10-89, F & G Enterprises, Al and Duane were instructed by W DePue to clean the area of 1 & 2 TKS. They were instructed to use 2 or 3 workers which ever was necessary to perform the work safely and efficiently. They were made aware that we have been purging (4) pipe support holes with hot water from the mixing stations at 21 - 24th water stations, also we were using 90lb steam with the hot water on the center two holes.

\* \* \*

Al and Duane was [*sic*] instructed by W DePue to clean from the center line of 1 & 2 tks and work west to 5 track trench. it was explained to them that the area was very slippery and hazardous. I instructed them to use squeegees or shovels and work the tar mat'l to 5 track trench. The area that they were assigned to clean was appx 15' west of the barricade horses."

capriciously reject the testimony of an unimpeached witness." *People ex rel. Brown v. Baker*, 88 Ill. 2d at 85. This is true even though the witness may be an interested party or an employee of one of the parties (*Chicago & Alton R.R. Co. v. Gretzner*, 46 Ill. 75, 80 (1867); *Bucktown Partners v. Johnson*, 119 Ill. App. 3d at 352), and plaintiff's argument to the contrary is therefore necessarily without merit.

■ Accordingly, we find that defendant's duty of reasonable care extended only to that portion of the premises between the center of tanks 1 and 2. We further find that plaintiff was not "in that part of the premises into which he was invited to enter, [nor] was [he] using them in a manner authorized by the invitation, whether express or implied." *Brett v. Century Petroleums, Inc.*, 302 Ill. App. 99, 111 (1939). Thus, as a matter of law, plaintiff's deviation from defendant's express but limited invitation necessarily converted him into a trespasser to whom the defendant owed a duty only to refrain from wilful and wanton conduct. *Soucie v. Drago Amusements Co.*, 145 Ill. App. 3d 348 (1986).

Moreover, we find that any duty to warn plaintiff of the hazardous condition on its property was satisfied by defendant *vis-a-vis* DePue's warning to Grahovec and Tolbert. In *Bakovich v. Peoples Gas Light & Coke Co.*, 45 Ill. App. 2d 182 (1963), an employee of an excavation firm was burned when a fellow employee broke a nearby gas main while operating a power shovel. Plaintiff argued that the owner of the main, the Peoples Gas Light & Coke Company, was liable because it had superior knowledge of the area and had indicated that it was safe to proceed. The appellate court, however, held that Peoples Gas did not owe a duty to warn each and every employee of the location of the main. It was sufficient that Peoples Gas had advised plaintiff's supervisor. *Bakovich*, 45 Ill. App. 2d at 188-89.

In this case, DePue testified that Koppers ordinarily worked "through supervision." In other words, DePue would simply notify F.G.'s on-site supervisor of what needed to be accomplished. DePue then expected that any instructions or warnings would be passed along to F.G's employees:

> "Q. And at that time in that meeting were you given any reason from those two men to expect or anticipate that that instruction [*i.e.*, the area to be cleaned] and that knowledge [*i.e.*, the attempts to steam purge] would not be passed down the line to the workers they assigned to go into that area?
>
> A. No, I wasn't."

As in *Bakovich*, defendant satisfied its duty to warn plaintiff by apprising Tolbert and Grahovec of the dangers created by the steam purging. Moreover, defendant's action in placing the pallets over the

holes and blocking the area around them with barricade horses and caution tape clearly satisfied his duty to those who would trespass. To hold otherwise would require a defendant in a case such as this to post a guard near the area of the potential hazard who could restrain those trespassers who attempted to enter the clearly marked hazardous area. In reaching this conclusion, we acknowledge that the determination of a breach of duty is a question for the trier of fact and is therefore subject to the manifest weight standard. *Coronel v. Chicago White Sox, Ltd.*, 230 Ill. App. 3d 734, 736 (1992), *appeal denied*, 146 Ill. 2d 625 (1992). Nonetheless, in this case, the jury's finding that defendant inadequately warned plaintiff or otherwise failed to satisfy his duty to the plaintiff is wholly unsupported by the evidence.

For the foregoing reasons, we reverse the circuit court's denial of defendant's motion for judgment *n.o.v.* and remand the matter with directions to enter judgment for defendant.

Reversed and remanded.

MCNULTY, P.J., and COUSINS, J., concur.