**AVEMCO INSURANCE COMPANY, INC., Plaintiff,**

v.

**ELLIOTT AVIATION FLIGHT SERVICES, INC., an Illinois Corporation, Defendant.**

**No. 98–4113.**

United States District Court, C.D. Illinois.

March 2, 2000.

John W. Harrington, Alan L. Farkas, Wilson Elser Moskowitz Edelman & Dicker LLP, Chicago, IL, for Avemco Insurance Company Inc., plaintiff.

Duncan B. Cooper, III, Matthew S. Hefflefinger, Heyl Royster Voelker & Allen, Peoria, IL, for Elliott Aviation Flight Services Inc., an Illinois Corporation, defendant.

## ORDER

McDADE, Chief Judge.

### I. Preliminary Matters

Before ruling on the merits of the case, the Court will address Defendant's Motion to Bar [Doc. # 38].

#### A. Prejudgment Interest

■ Since jurisdiction of this action is based on diversity of citizenship, "the availability of prejudgment interest must be determined by reference to state law." *In re Air Crash Disaster Near Chicago, Ill.*, 644 F.2d 633, 637 (7th Cir.1981). Under Illinois law, prejudgment interest is not allowed unless provided for by statute, or by agreement of the parties. *Id.* at 637–38. Here, there is no evidence of any agreement regarding prejudgment interest, and Plaintiff has not indicated any statute in support of its claim for such interest.

■ Further, the Illinois Appellate Court has indicated that § 2 of the Interest Act was not intended to provide for prejudgment interest in tort cases. *See Matich v. Gerdes*, 193 Ill.App.3d 859, 140 Ill.Dec. 737, 550 N.E.2d 622, 631 (4th Dist. 1990). That court has also specifically held that Illinois does not permit the award of prejudgment interest in a suit for recovery for negligence. *See Wilson v. Cherry*, 244 Ill.App.3d 632, 184 Ill.Dec. 77, 612 N.E.2d 953, 958 (4th Dist.1993). Accordingly, the Court will grant Defendant's motion to bar Plaintiff's claim of prejudgment interest.

#### B. Attorneys' Fees

Again, since jurisdiction of this action is based on diversity of citizenship, the Court must look to Illinois state law to evaluate Plaintiff's claim for attorneys' fees. *See Champion Parts, Inc. v. Oppenheimer & Co.*, 878 F.2d 1003, 1006 (7th Cir.1989) Illinois follows the American Rule. *Id.* That is, absent a statute or an agreement between the parties, a successful litigant must bear the burden of his or her own attorneys' fees. *Id.*

■ There is an exception to this rule in Illinois. If, as a consequence of the defendant's negligence, the plaintiff must incur attorneys' fees, those fees are recoverable as damages. *Id.* To do so, the plaintiff must show that the attorneys' fees are the natural consequence of the tortious act by the defendant against the plaintiff. *Id.* at 1006–07.

However, *Sorenson v. Fio Rito*, 90 Ill. App.3d 368, 45 Ill.Dec. 714, 413 N.E.2d 47 (1st Dist.1980), makes it clear that attorneys' fees for the instant law suit are inappropriate: "the policy against awarding attorneys' fees was intended to apply only where a successful litigant seeks to recover his costs in maintaining the lawsuit." *Sorenson*, 45 Ill.Dec. 714, 413 N.E.2d at 51. Thus, it did not prevent Mrs. Sorenson from "recovering losses directly caused by the defendant's conduct simply because those losses happen[ed] to take the form of attorneys' fees." *Id.* at 52, 45 Ill.Dec. 714. The *Sorenson* court explained: "The plaintiff here is not attempting to recover the attorneys' fees she expended in bringing this lawsuit. Rather, she seeks to recover losses incurred in trying to obtain refunds of tax penalties which were assessed against her solely as a result of the defendant's negligence." *Id.* Consequently, Plaintiff may not recover its attorneys' fees in connection with the prosecution of this lawsuit. Defendant's motion to bar same will be allowed.

### II. Decision, Findings of Law and Conclusions of Fact

In consideration of the evidence adduced at the trial and the arguments and legal memoranda of the parties, the Court has made certain Findings of Fact and Conclusions of Law, hereinafter set forth. In deciding this case, the Court has had to determine the credibility of the various witnesses and the Findings of Fact reflect this weighing process with reference to any material fact in dispute.

Based upon the factual record before the Court and the Court's determination of the

credibility of the various witnesses, the Court makes the following Findings of Fact and Conclusions of Law.

### A. FINDINGS OF FACT

The Court finds that:

- On February 25, 1997, a 1978 Beechcraft Bonanza, A–36, serial number E–1228, FAA registration N18DR, (hereinafter the "subject aircraft") was destroyed during a forced landing into rough terrain.

- The aircraft was insured by Plaintiff, Avemco Insurance Company, Inc. (hereinafter "Avemco") for $132,000.00. It was owned by Electronic Business Equipment and Supply Co. (hereinafter "EBE").

- Plaintiff's recoverable damages total $98,540.72 ($135,145.78 less $36,605.06 received by Plaintiff in salvage monies).

- At the time of the accident, an agent and employee of Defendant Elliott Aviation Flight Service, Inc. (hereinafter "Elliott"), was administering a biennial flight review (hereinafter "BFR") to one of EBE's pilots.

- A BFR is a practical flight test review which must be successfully completed every twenty-four months to maintain a valid pilot's certificate. Pursuant to the Federal Aviation Regulations (hereinafter "FARs"), a BFR must include flight instruction as well as the completion of various flight maneuvers which demonstrate the pilot's ability to safely operate the aircraft.

- The BFR is administered by a Certified Flight Instructor (hereinafter "CFI"), and the CFI determines which maneuvers must be performed during the BFR.

- A CFI should anticipate that the pilot being reviewed will make mistakes and must be able to instruct him and/or take control of the aircraft as necessary to maintain safe operations.

- Larry Kerr (hereinafter "Kerr") was the employee who was sitting for his BFR. Brad Paul (hereinafter "Paul") was the flight instructor who administered the BFR on behalf of Defendant.

- Kerr had made two prior unsuccessful attempts to complete this BFR. On the first attempt, Kerr did not follow proper checklist procedures during a simulated engine failure. Paul failed Kerr and provided additional ground instruction to him. On the next attempt, Paul and Kerr experienced mechanical problems with the aircraft (unrelated to the instant case) and they were unable to initiate the BFR maneuvers.

- By the time Kerr scheduled his third attempt to complete his BFR, more than twenty-four (24) months had elapsed since he had last completed a BFR. Consequently, Kerr did not meet the requirements to legally operate the aircraft as the Pilot in Command (hereinafter "PIC").

- However, Kerr could operate the controls under the supervision of a CFI, such as Paul.

- Kerr had considerable prior experience operating the subject aircraft.

- The flight of February 25, 1997, proceeded without incident until Paul initiated a simulated engine loss. Kerr occupied the left front seat, and Paul occupied the right front seat. The left seat is traditionally occupied by the PIC. However, it is customary for a pilot being reviewed to sit in the left seat and to manipulate the controls. Nevertheless, both Paul and Kerr considered Paul to be the PIC.

- Pursuant to the FARs, the PIC is directly responsible for, and is the final authority as to, the operation of the aircraft. Paul had determined the course of flight, the flight altitude, which maneuvers should be performed, and when they should be performed. Paul believed that he had the responsibility to determine the position of the flight controls, including the placement of the fuel selector valve, throughout the flight.

- The subject aircraft had six seats, two in front for the pilots and four behind. The subject aircraft was further equipped with a single throw-over yoke. In other

words, rather than having a control yoke in front of each front seat, this aircraft had a single yoke which could be released and locked into position in front of either occupant.

- The FARs demand that only aircraft with fully functioning dual controls be used for flight instruction.

- Paul administered this BFR to Kerr in EBE's single yoke aircraft, and he was ultimately unable to take the controls due to the difficulty of repositioning the yoke in the midst of an emergency.

- The subject aircraft is equipped with two fuel tanks, one in either wing. A fuel selector valve is used to select between three positions: left main, right main, and "off."

- The fuel selector valve is located on a shelf, approximately eight inches off the floorboard and directly in front of the left seat, behind the left-seat pilot's left foot and under his left leg. The valve is controlled by a rotating selector handle which points to the desired position after it is "clicked" into place.

- In order to observe the position of the fuel selector valve, the right-seat pilot would have to have the left-seat pilot move his leg and/or body. In other words, it is impossible for the right seat pilot to observe the position of the fuel selector valve without having the left seat pilot reposition his body and/or leg from a normal seating position.

- Paul knew that a common cause of engine failure is in-flight fuel starvation.

- The fuel selector on the subject aircraft does not have a lock-out feature to prevent inadvertent selection of the "off" position.

- Throughout the flight, the yoke was positioned in front of Kerr.

- At an altitude of approximately 2500 feet, Paul initiated an engine failure by retarding the throttle. As the engine slowed dramatically, Kerr called out the steps on the emergency procedures checklist while accomplishing the required tasks.

- In accordance with the checklist, Kerr told Paul that he was moving the fuel selector valve from the right tank position to the left tank position.

- Paul told Kerr that this was not necessary.

- Paul did not make any efforts to verify that the fuel selector valve had not been moved from the right tank position. Kerr did not move the fuel selector valve back to the right tank when Paul told him that it was not necessary to select the other tank.

- When Paul decided to terminate the simulated engine failure sequence, he pushed in the throttle and there was about five (5) seconds of power before the engine cut out. At this time, the aircraft was approximately eleven miles from the nearest airport, 1000 feet above the ground, and one to one and a half minutes away from impact—if power could not be restored.

- With Kerr operating the controls, Paul having unsuccessfully tried to position the throw-over yoke on his side of the aircraft, Paul determined the safest landing area and conducted a final mental checklist without detecting the malposition of the fuel selector valve, which he assumed had not been moved during the simulated engine failure.

- Although neither Paul nor Kerr realized it at the time, Kerr had inadvertently placed the fuel selector valve in the "off" position.

- Had Paul attempted to view the fuel selector valve, he would have discovered that it was in the "off" position. Had Kerr attempted to view the fuel selector valve, he would have discovered that it was in the "off" position.

- During this true emergency situation, no manual checklist was used due to the pressures of time. Plaintiff's expert did not find this to be a breach of the standard of care.

- When landing the airplane, Kerr handled the controls as they landed with the gear

up. Kerr acted appropriately when he landed with the gear up.

- Paul had initiated the simulated engine failure without warning Kerr.
- Paul knew of Kerr's prior poor performance during the last unsatisfactory BFR, due to his failure to utilize the manual emergency checklist.
- Paul breached his duties under FARs 91.109(a), 61.56(a), and 91.13.
- Kerr breached his duty under FAR 91.13.
- Paul's decision to administer the BFR in a single yoke aircraft was not a proximate cause of the accident.
- Paul's decision to conduct the simulated engine failure at an altitude of 2500 feet was not a proximate cause of the accident.
- Paul's failure to lay the ground rules regarding whether Kerr should actually execute the procedures he referenced from the engine failure checklist was a proximate cause of the accident.
- Paul's failure to verify the position of the fuel selector valve after telling Kerr that it was unnecessary to change its placement on the right tank and his later failure to include the fuel selector valve in his real emergency checklist were both proximate causes of the accident.
- Kerr's failure to correctly execute the fuel selector valve checklist procedure was a proximate cause of the accident.
- Kerr's failure to detect his error after Paul instructed him that it was unnecessary to select the other tank, and later during the emergency, was a proximate cause of the accident.

### B. FINDINGS OF LAW

Preliminarily, the Court finds, and the parties agree to the following conclusions of law:

- That Paul and Kerr were each acting within the scope and authority of their employment.
- That EBE has properly assigned its interest to Plaintiff, Avemco.

- That Kerr did not possess the credentials to operate the subject aircraft as PIC.
- That Paul was the PIC.

Having found same, the Court further finds that Paul was negligent; that his negligence proximately caused damage to the subject aircraft; and that Defendant is liable for Paul's negligence. However, the Court also finds that Kerr was contributorily negligent, and that such negligence is attributable to Plaintiff. Accordingly, assuming 100% represents the total amount of fault which caused the accident in question, the Court finds Defendant to be 80% at fault. The Court further finds Plaintiff's comparative fault to be 20%.

To establish a claim for negligence in Illinois, Plaintiff must prove by a preponderance of the evidence that the defendant owed a duty of care, that the defendant breached that duty, and that the plaintiff suffered an injury proximately caused by the breach. *Curatola v. Village of Niles*, 154 Ill.2d 201, 181 Ill.Dec. 631, 608 N.E.2d 882, 885 (1993).

### i. Duty

When the plaintiff's negligence theory is based on the violation of a statute, the rule is "that the violation of a statute or ordinance designed for the protection of human life or property is *Prima facie* evidence of negligence." *French v. City of Springfield*, 65 Ill.2d 74, 2 Ill.Dec. 271, 357 N.E.2d 438, 440 (1976). "[T]he party injured has a cause of action if he was intended to come within the scope of the protection afforded by the [statute] and the injury was proximately connected with the violation." *Id.* However, "the evidence of negligence may be rebutted by proof that the party acted reasonably under the circumstances, despite the [statutory] violation." *Davis v. Marathon Oil Co.*, 64 Ill.2d 380, 1 Ill.Dec. 93, 356 N.E.2d 93, 97 (1976). Proximate cause is a factual question. *Id.* The legal question is "whether the [statute] was designed to prevent the injury sustained." *Id.*

Here, there are several relevant regulations:

- FAR 91.13 "Careless or reckless operation," provides:

 (a) Aircraft operations for the purpose of air navigation. No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.

 (b) Aircraft operations other than for the purpose of air navigation. No person may operate an aircraft, other than for the purpose of air navigation, on any part of the surface of an airport used by aircraft for air commerce (including areas used by those aircraft for receiving or discharging persons or cargo), in a careless or reckless manner so as to endanger the life or property of another.

- FAR 61.56 "Flight review," states in part:

 (a) Except as provided in paragraphs (b) and (f) of this section, a flight review consists of a minimum of 1 hour of flight training and 1 hour of ground training. The review must include:

 (1) A review of the current general operating and flight rules of part 91 of this chapter; and

 (2) A review of those maneuvers and procedures that, at the discretion of the person giving the review, are necessary for the pilot to demonstrate the safe exercise of the privileges of the pilot certificate.

- FAR 91.109 "Flight instruction; Simulated instrument flight and certain flight tests," provides in part:

 (a) No person may operate a civil aircraft (except a manned free balloon) that is being used for flight instruction unless that aircraft has fully functioning dual controls. However, instrument flight instruction may be given in a single-engine airplane equipped with a single, functioning throwover control wheel in place of fixed, dual controls of the elevator and ailerons when—

 (1) The instructor has determined that the flight can be conducted safely; and

 (2) The person manipulating the controls has at least a private pilot certificate with appropriate category and class ratings.

- FAR 1.1 defines a PIC as follows:

 "Pilot in command" means the person who:

 (1) Has final authority and responsibility for the operation and safety of the flight;

 (2) Has been designated as pilot in command before or during the flight; and

 (3) Holds the appropriate category, class, and type rating, if appropriate, for the conduct of the flight.

- FAR 91.3 "Responsibility and authority of the pilot in command," provides in part:

 (a) The pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft.

 (b) In an in-flight emergency requiring immediate action, the pilot in command may deviate from any rule of this part to the extent required to meet that emergency.

The Court finds that these regulations were enacted to protect both the lives of pilots and their passengers, as well as the property that is the aircrafts in which they fly. Consequently, both Paul and Kerr are of the class of people which the regulations are designed to protect; and the subject aircraft is the kind of property which the regulations are designed to protect. The Court will therefore consider these regulations in determining whether Kerr and/or Paul breached the standard of care they owed to each other and with regard to the subject aircraft.

In addition to the duties arising out of the above regulations, Plaintiff claims that Paul owed Kerr the duty to act as a reasonably prudent pilot. Defendant claims that Kerr owed Paul a similar duty. However, Plaintiff denies that Kerr owed Paul any duties.

The Court finds that both Kerr and Paul had a duty to act as a reasonably prudent pilot would have acted under the circumstances. *See e.g., Steering Committee v. United States,* 6 F.3d 572, 579 (9th Cir. 1993) (referring to "the care that a reasonably prudent pilot would exercise under the circumstances"). In so finding, the Court rejects Plaintiff's argument that Paul, as the PIC, is the only person who can be liable for negligence in this case.

Plaintiff bases this argument on *Lange v. Nelson–Ryan Flight Service, Inc.,* 259 Minn. 460, 108 N.W.2d 428 (1961). In *Lange,* the Supreme Court of Minnesota held that the pilot in command is responsible for any negligence, regardless of whether he was in actual operation of the controls. *Lange,* 259 Minn. at 466–68, 108 N.W.2d 428.

However, the Court is more inclined to agree with the Tenth Circuit, which rejected the rule in *Lange, see Udseth v. United States,* 530 F.2d 860, 861–62 (10th Cir. 1976), and with a later District Court of Minnesota decision which distinguishes *Lange. See Held v. Mitsubishi Aircraft International, Inc.,* 672 F.Supp. 369, 392 (D.Minn.1987). In *Lange,* the evidence supported a finding of negligence; however, the facts did not decisively indicate whether it was negligence on behalf of the flight instructor or the flight instructee. The rule of absolute PIC liability provided the answer where the alternative was to find for the defendant based on the speculative nature of the sparse evidence.

The *Held* court distinguished *Lange* where there was some evidence to indicate who was the tortfeasor. *See Held,* 672 F.Supp. at 392. This case is most similar to *Held* since both pilots survived the crash. Hence, there is ample evidence from which to decide who was negligent. Consequently, the Court finds the *Lange* decision to be inapplicable.

### ii. Breach of Duty

Whether a party breached his or her duty is a question of fact. *See Cockrell v. Koppers Ind. Inc.,* 281 Ill.App.3d 1099, 217 Ill.Dec. 587, 667 N.E.2d 676, 682 (1st Dist. 1996). Plaintiff claims that Paul breached the FARs and committed negligence by conducting the BFR in a single yoke aircraft (FARs 91.109(a) and 61.56(a)); Plaintiff claims that Paul breached FAR 91.13 and committed negligence by operating the subject aircraft in a careless and reckless manner; and Plaintiff claims that Paul breached his duty to act as a reasonably prudent pilot would act under the circumstances.

The Court agrees with Plaintiff and finds that Paul did breach his duties under the FARs as claimed by Plaintiff. The Court finds that both Paul and Kerr breached their respective duties to act as prudent pilots would act under the circumstances, as required by FAR 91.13 regarding careless or reckless operation of an aircraft.

However, the Court does not find that Paul had a duty to conduct the simulated engine failure at an altitude which was higher than 2500 feet. Consequently, no duty was breached with respect to this claim by Plaintiff. The Court finds that Paul had a duty to ensure that the emergency checklist procedures were implemented in a safe and correct manner. The Court further finds that Paul breached this duty when he failed to check the positioning of the fuel selector valve after the completion of the simulated engine failure when the engine would not actually start.

Defendant claims that Kerr breached his duty to operate the subject aircraft recklessly and carelessly in violation of FAR 91.13 so as to endanger Paul's life. Defendant further claims that Kerr breached his duty to act as a reasonably prudent pilot would under the circumstances.

Plaintiff counters that Defendant cannot prove any breach of duty by Kerr because "the proper performance of a trainee pilot involves matters beyond the ordinary experiences of a fact finder." (Pl. Mem.Supp.Prop. Find. Fact Concl.Law p. 8). Plaintiff argues that expert testimony

is needed on this issue, and since it is too late for Defendant to obtain an expert opinion on this matter, Defendant cannot show any comparative fault on behalf of Kerr.

In support of this argument, Plaintiff cites *Georgou v. Fritzshall*, 1998 WL 417924 *7 (N.D.Ill.1998), and *Salgado v. General Motors*, 1997 WL 106282 *3 (N.D.Ill.1997). However, those cases involved issues which were more complex than those involved in the instant case. In *Georgou*, the court held that expert evidence was required to "establish the standard of care and its breach in legal malpractice cases." *Georgou*, 1998 WL 417924 at *7. In *Salgado*, the court found that "products liability actions involve threshold questions often requiring specialized knowledge or expertise outside a layman's knowledge." *Salgado*, 1997 WL 106282 at *3. This was because: "Without expert testimony as to design standards, engineering principles and collision force the jury would be left to speculate about matters which are outside the common knowledge of a lay jury." *Id.*

■ Thus, lay jurors were not expected to know how attorneys should act, nor were they expected to comprehend engineering principles. The Court does not think those cases are analogous to this one. The Court thinks that a lay juror (or this Court) can competently decide whether a reasonably prudent pilot under the instant circumstances would have inadvertently switched the fuel selector to "off." The Court does not believe that this decision requires specialized knowledge as was required in the above cases. Moreover, the Court accepts FAR 91.13 as establishing a common law duty to exercise reasonable care owed by Kerr in his operation of a plane as a pilot under examination. Accordingly, the Court rejects Plaintiff's argument that Defendant cannot prove that Kerr breached his duty of care and was therefore contributorily negligent. Furthermore, the Court finds that Kerr in fact breached this duty by failing to correctly execute the fuel selector valve checklist

procedure, and by failing to detect this error when Paul said that it was not necessary to select the other tank, and later when the actual emergency arose.

### *iii. Proximate Cause/Forseeability*

■ Proximate cause is a question of fact. *Davis*, 1 Ill.Dec. 93, 356 N.E.2d at 100. The general rule is: "The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act." *Id.* "An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury and itself becomes the direct and immediate cause of the injury." *Id.* "The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable." *Id.* Hence, "to escape liability, defendant must demonstrate that the intervening event was unforeseeable." *Id.* There can be more than one cause of an accident. It is sufficient if a cause concurs with some other cause acting at the same time which in combination with it causes the injury.

In the instant case, Paul's decision to administer the BFR in a single yoke aircraft was a not proximate cause of the accident. The Court finds that there is no evidence to support a finding that having dual controls would have impacted either Kerr's or Paul's actions regarding the fuel selector valve.

Paul's decision to conduct the simulated emergency procedure at an altitude of 2500 feet, standing alone, was not a proximate cause of the accident. However, Paul's failure to lay the ground rules—that is, that Kerr was to reference the emergency checklist procedures regarding en-

gine failure without executing same unless Paul so directed him—did proximately cause the accident. Consequently, the only effect of the lowered altitude was to reduce the window of time available for discovery and correction of the problem. However, there is no evidence in the record to suggest that additional time would have led to the discovery of the problem. This justifies a finding of no proximate cause.

Paul's failure to include the fuel selector valve in his real emergency checklist was a proximate cause of the accident. Paul was aware that the fuel selector valve was part of the emergency checklist, and he failed to include that item in his performance of that checklist.

As to Kerr, his failure to correctly execute the fuel selector valve checklist procedure was a proximate cause of the accident. As an experienced pilot in the subject aircraft, this should have been a simple procedure, well within his range of experience and competency. Further, Kerr's failure to detect his error when Paul instructed him that it was not necessary to select the other tank, and later during the emergency, was also a proximate cause of the accident.

### iv. *Section 876 of the Restatement of Torts*

■ The Court finds § 876 of the Restatement of Torts to be inapplicable to this lawsuit. Section 876 provides:

PERSONS ACTING IN CONCERT

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Plaintiff argues that this section of the Restatement applies to make any negligence of Kerr attributable to Paul. The Court disagrees, because the plain language of § 876 and the comments thereto make it clear that this is not a situation in which § 876 is relevant. The comment on § 876(a) states:

Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words and may be implied and understood to exist from the conduct itself. Whenever two or more persons commit tortious acts in concert, each becomes subject to liability for the acts of the others, as well as for his own acts.

There is no evidence that Kerr and Paul were acting in accordance with any agreement between them. Moreover, even if § 876(a) applied, Kerr and Paul would be jointly and severally liable for the damages claimed by Plaintiff. Thus, § 876, even if applicable, would not operate (as Plaintiff suggests) to make only Paul liable for all of Kerr's negligence.

The comment on clause (b) of § 876 provides:

Advice or encouragement to act operates as a moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same effect upon the liability of the adviser as participation or physical assistance.

There is no evidence in the record that Paul encouraged Kerr to act negligently. Accordingly, § 876(b) is irrelevant. The comment on § 876(c) states:

When one personally participates in causing a particular result in accordance with an agreement with another, he is responsible for the result of the united effort if his act, considered by itself, constitutes a breach of duty and is a substantial factor in causing the result,

irrespective of his knowledge that his act or the act of the other is tortious.

Again, there is no evidence of an agreement between Paul and Kerr. Accordingly, the Court will not consider § 876 in deciding this case.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Bar [Doc. # 38] is hereby GRANTED.

IT IS FURTHER ORDERED that JUDGMENT is entered FOR PLAINTIFF IN THE AMOUNT OF $98,-540.72 — REDUCED BY 20% WHICH REPRESENTS PLAINTIFF'S COMPARATIVE FAULT, RESULTING IN AN AWARD IN THE AMOUNT OF $78,-832.58.